IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ELIZABETH COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil No. 1:17-cv-1313-LMB-MSN |
| ) | |
| GREENLY GROUP FOR SOLAR ) | |
| TECHNOLOGIES, LTD., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT & RECOMMENDATION**

This matter comes before the Court on Plaintiff's Motion for Default Judgment (Dkt. No. 11). Having reviewed the record and pleadings, the undersigned Magistrate Judge recommends entering default judgment in Plaintiff's favor for the reasons that follow.

**I.    Background**

On November 17, 2017, Plaintiff Elizabeth Cooper ("Ms. Cooper") filed a Complaint against Defendant Greenly Group for Solar Technologies, Ltd. ("Greenly") seeking (1) a declaratory judgment that non-party Kagan Ceran's ("Mr. Ceran") transfer of intellectual property to Greenly was fraudulent, (2) the establishment of a constructive trust over these assets for Plaintiff's benefit, and (3) an injunction preventing "further disposition of the patent and patent applications at issue." Compl. ¶¶ 4, 82 (Dkt. No. 1). Plaintiff states that 30 days before she received her first arbitral award[1] against Mr. Ceran, Mr. Ceran transferred valuable patents to

---

[1] Ms. Cooper prevailed in two arbitration proceedings against Mr. Ceran for breach of a business agreement in 2010 when they both lived in California. *See* Compl. ¶¶ 10–14, 17; Cooper Decl. ¶¶ 4–5 (Dkt. No. 12-1); Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 4 (Dkt. No. 12). Plaintiff filed a demand for arbitration with the International Centre for Dispute Resolution, and both parties participated in the proceedings and were represented by counsel. Compl. ¶¶ 15–16; Cooper Decl. ¶ 5; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 4. Plaintiff obtained arbitral awards on May 31, 2013 and November 27, 2013. Compl. ¶¶ 40, 44; Cooper Decl. ¶¶ 5–6; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 4.

Defendant, an entity in the British Virgin Islands, which prohibited her from accessing them to collect on her award. *Id.* ¶¶ 1, 18–19; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 3–4 (Dkt. No. 12); Cooper Decl. ¶ 7 (Dkt. No. 12-1). Plaintiff alleges that the assignment was a fraudulent conveyance and constitutes a violation of the California Uniform Voidable Transactions Act as well as negligent and/or fraudulent concealment on the part of Defendant. Compl. ¶ 2, at 9–13. Plaintiff requests that this Court direct Defendant to hold the patent rights in constructive trust for Plaintiff and order the U.S. Patent and Trademark Office ("USPTO") to transfer twelve patent rights, including one patent that was granted on May 28, 2013, to Plaintiff to satisfy her two arbitral awards and judgments[2] against Mr. Ceran. Ex. B at 4–5 (Dkt. No. 19-2).

## II.     Procedural History

On November 29, 2017, Plaintiff mailed via FedEx the Summons and Complaint to Defendant, addressing it to Gwyneth Vanterpool who signed the patent assignment on behalf of Defendant. *See* Pl.'s Mot. for Service Pursuant to 35 U.S.C. § 293 [hereinafter Pl.'s Mot. for Service] at 2 (Dkt. No. 4); Webb Decl. I ¶¶ 2–3 (Dkt. No. 4-2); Ex. A (Dkt. No. 4-3); Patent Assignment at 5 (Dkt. No. 1-2). On December 1, 2017, a K. Dasent at Harneys Corporate Services Limited ("Harneys"), Defendant's registered agent[3] and the company that incorporated Defendant, signed for the package. *See* Pl.'s Mot. for Service at 2; Webb Decl. I ¶¶ 4–6; Registry of Corporate Affairs Search at 2 (Dkt. No. 4-6); Proof of Delivery at 2 (Dkt. No. 4-7); Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 2. Accordingly, Defendant, through its registered agent, received the Summons and Complaint in December 2017.

---

[2] After the issuance of the arbitral awards, San Francisco Superior Court entered judgments against Mr. Ceran. *See* Compl. ¶¶ 41, 46; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 9; Cooper Decl. ¶ 6.

[3] The Registry of Corporate Affairs only provides Harneys Corporate Services Limited as the registered agent for Defendant; there is no individual's name associated with Harneys. *See* Registry of Corporate Affairs Search at 2 (Dkt. No. 4-6).

On December 7, 2017, Plaintiff filed a Motion for Service Pursuant to 35 U.S.C. § 293 (Dkt. No. 4), requesting that the Court find FedEx delivery to Defendant as effective service or allow Plaintiff to serve Defendant by publication under 35 U.S.C. § 293.  *See* Pl.'s Mot. for Service at 1.  The Court granted this Motion on December 8, 2017, requiring Plaintiff to publish a copy of the Order in the *New York Times International Edition* and serve a copy of the Order on Defendant through FedEx International Priority Mail.  *See* Order at 1 (Dkt. No. 5).  The Order notified Defendant that within 21 days of its publication in the *New York Times International Edition*, Defendant must answer or otherwise respond to the Complaint or else "this Court may render a judgment against [D]efendant."  *Id.* at 2; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 2.

On December 12, 2017, Plaintiff served a copy of the Order on Defendant.  *See* Webb Decl. II ¶ 2 (Dkt. No. 6); Ex. A (Dkt. No. 6-1).  A FedEx confirmation shows Defendant received the package on December 14, 2017, and K. Dasent signed for it.  Webb Decl. II ¶ 3; Proof of Delivery at 2 (Dkt. No. 6-2).  Eight days later, the *New York Times International Edition* published this Court's Order dated December 8, 2017.  *See* Webb Decl. II ¶¶ 4–5; Ex. A (Dkt. No. 7-1); King Email (Dkt. No. 6-3).  Plaintiff filed proof of publication on January 10, 2018 (Dkt. No. 7-1).  Defendant did not file a response within 21 days of publication (*i.e.* January 12, 2018) (Dkt. Nos. 5, 8–9).  On January 26, 2018, the Clerk entered a default against Defendant (Dkt. No. 10).  Thirteen days later, Plaintiffs filed this Motion for Default Judgment (Dkt. No. 11).

### III.   Service of Process, Jurisdiction, and Venue

Pursuant to 35 U.S.C. § 293, "[e]very patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder.  If . . . no person has been designated, the United States District Court for the Eastern District of Virginia shall have jurisdiction and summons shall be served by

3

publication or otherwise as the court directs. The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court." Because Plaintiff complied with this Court's requirements for service, she is found to have properly served the Complaint on Defendant pursuant to 35 U.SC. § 293 and Federal Rule of Civil Procedure 4(h)(1)(B). *See* Order at 2 (Dkt. No. 5); Webb Decls. II & III (Dkt. Nos. 6–7); Ex. A (Dkt. No. 6-1); Proof of Delivery at 2 (Dkt. No. 6-2); Ex. A (Dkt. No. 7-1).

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), as Plaintiff currently resides in California, Defendant is a British Virgin Islands entity, and the amount in controversy exceeds $75,000. Compl. ¶ 7; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 10–11. On February 16, 2018, the Court ordered Plaintiff to supplement the record to demonstrate that the patent rights in question are valued at more than $75,000 (Dkt. No. 16). *See* 28 U.S.C. § 1332. On March 8, 2018, Plaintiff submitted the declaration of Chris Toffales ("Mr. Toffales"), "an operating executive in engineering- and technology-intensive businesses" and a mergers and acquisitions professional, who assesses the value of technology and intellectual property, including patent rights (Dkt. No. 19-1). Based on Mr. Toffales' knowledge and experience, he prices one of the patent rights at issue, United States Patent Application No. 12/597,151, which claimed priority to U.S. Provisional Patent Application No. 60/913,997 and was granted on May 28, 2013 as United States Patent No. 8,449,940, with the title "Deposition of High-Purity Silicon via High-Surface Area Gas-Solid or Gas Liquid-Interfaces and Recovery via Liquid Phase," as worth more than $75,000. Toffales Decl. ¶¶ 5, 30–31. Mr. Toffales states that the '940 Patent provides a process to save silicon manufacturers 18 to 20 percent in costs by producing polysilicon squares instead of rods. *Id.* ¶¶ 17–19, 31. In 2017, "billions of dollars were spent worldwide" on polysilicon production, 22.5 percent of which is attributed to wasted polysilicon resulting from the manufacture

of rods rather than polysilicon squares. *Id.* ¶¶ 28–29. Given Mr. Toffales' declaration, the Court finds that because one patent within Defendant's possession is valued at more than $75,000, this Court has subject matter jurisdiction.

This Court also has personal jurisdiction over Defendant pursuant to 35 U.S.C. § 293, which provides that if a patentee not residing in the United States does not designate an individual in the United States to receive service on the patentee's behalf, this Court "shall have jurisdiction . . . ." *Id.* ¶ 8. Because Defendant is in the British Virgin Islands and has not registered such a person with the USPTO, this Court has jurisdiction. *Id.*; Cooper Decl. ¶ 17; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 7–8, 11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this Court.

## IV. Legal Standard

Default judgment is appropriate if the well-pled allegations of the complaint establish that the plaintiff is entitled to relief and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). By defaulting, the defendant admits the plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *See Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, No. 2:15-cv-451, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505

5

(E.D. Va. 2009)). Here, because Defendant has not answered or otherwise timely responded, the well-pled allegations of fact contained in the Complaint are deemed to be admitted.

**V.    Analysis**

Having examined the record, the Magistrate Judge finds that the well-pled allegations of fact contained in the Complaint—and supported by Plaintiff's Memorandum of Law in Support of Motion for Default Judgment, declarations, and exhibits—establish that Mr. Ceran fraudulently transferred patent applications to Defendant to avoid collection of these assets by his creditors. *See* Cooper Decl. ¶ 7. Defendant's receipt of these patent rights is therefore in violation of California Civil Code §§ 3439.04–3439.05. Accordingly, Plaintiff is entitled to default judgment in her favor as detailed below.

**A.    Uniform Voidable Transactions Act, California Civil Code § 3439.04**

Pursuant to California's Uniform Voidable Transactions Act, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1)    With actual intent to hinder, delay, or defraud any creditor of the debtor.
(2)    Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
    (A)    Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
    (B)    Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

Cal. Civ. Code § 3439.04(a). A court need only find one of the above elements satisfied—§ 3439.04(a)(1) or § 3439.04(a)(2)—for a transfer to be deemed fraudulent. *See Optional Capital, Inc. v. Das Corp.*, 166 Cal. Rptr. 3d 705, 715 (Ct. App. 2014) (citations omitted).

To determine actual intent under § 3439.04(a)(1), courts may consider any of the following factors:

(1) Whether the transfer or obligation was to an insider.
(2) Whether the debtor retained possession or control of the property transferred after the transfer.
(3) Whether the transfer or obligation was disclosed or concealed.
(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(5) Whether the transfer was of substantially all the debtor's assets.
(6) Whether the debtor absconded.
(7) Whether the debtor removed or concealed assets.
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
(11) Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b). Accepting as true the allegations in Plaintiff's Complaint, all of these factors, with the exception of the last one, are met. *See* Fed. R. Civ. P. 8(b)(6). First, Plaintiff states that the results of a private investigation establish that Mr. Ceran created and currently controls Greenly, and therefore, Mr. Ceran retained possession of the patent rights after the transfer. *See* Compl. ¶¶ 1, 6, 31; Cooper Decl. ¶¶ 7, 19; Registry of Corporate Affairs Search at 2 (listing "Ceran" as the client reference number for Greenly); Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 14. Neither Mr. Ceran nor Defendant informed Plaintiff of the patent assignment during the arbitration period, thereby permitting Mr. Ceran to remove and conceal assets before Plaintiff obtained an award. Compl. ¶¶ 1, 6, 26, 32; Cooper Decl. ¶¶ 7, 14; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 14. The patent transfer agreement also fails to specify the type of consideration, only noting that "[f]or good and valuable consideration paid by Assignee, the receipt of which is hereby acknowledged by Assignor, Assignor hereby sells, assigns, and transfers to Assignee, its successors and assigns, the entire and exclusive right, title[,] and interest in, to and

7

under the Patent Rights . . . ." Patent Assignment at 4.  Plaintiff does not know of any consideration with which Mr. Ceran provided Defendant in exchange for the profitable patent rights, and notes that "Mr. Ceran believed the patent assets to be valuable, otherwise he would not have gone to the trouble and expense of forming Greenly and making the Patent Assignment to Greenly[,]" which was incorporated in the British Virgin Islands six days before the patent transfer.  Compl. ¶¶ 23–24; Cooper Decl. ¶¶ 10, 12; Registry of Corporate Affairs Search at 2; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 14.

On March 12, 2012, before the execution of the patent assignment, Plaintiff filed a demand for arbitration with the International Centre for Dispute Resolution ("ICDR") to resolve a contract disagreement with Mr. Ceran, threatening him with a lawsuit.  Compl. ¶¶ 15, 18, 20, 33; Cooper Decl. ¶¶ 5, 7, 9; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 14.  Thirty days before the ICDR issued its first arbitral award, amounting to $1,216,404.30 for Plaintiff, Mr. Ceran transferred the patent rights to Defendant.  Compl. ¶¶ 18, 21–22, 40; Cooper Decl. ¶¶ 6–7.  Plaintiff states that the patent assignment transferred "all or substantially all" of Mr. Ceran's wealth to Defendant, which rendered Mr. Ceran insolvent as to his United States assets.  Compl. ¶¶ 34–35; Cooper Decl. ¶¶ 21, 25; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 14.  Mr. Ceran subsequently absconded from the United States to Turkey.  Compl. ¶ 35; Cooper Decl. ¶¶ 22, 25; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 14.  Based on a review of the above factors, Plaintiff demonstrates that in transferring the patent rights, Mr. Ceran exhibited "actual intent to hinder, delay, or defraud" one of his creditors—Plaintiff.  *See* Cal. Civ. Code § 3439.04(a)(1).

Plaintiff also meets the requirements of § 3439.04(a)(2) because there is no indication that Defendant received consideration in exchange for the patent rights, and Mr. Ceran reasonably should have believed that the arbitrator would direct him to pay debt owed to Plaintiff—at least

8

$1,000,000—as a result of his breach. *See* Compl. ¶¶ 15, 20, 23–24, 33; Cooper Decl. ¶¶ 4, 5, 9, 11–12; Patent Assignment at 4; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 15.

### B. Uniform Voidable Transactions Act, California Civil Code § 3439.05

Alternatively, Plaintiff seeks recovery of the patent assets under California Civil Code § 3439.05(a), which states that "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." As stated above, Plaintiff's claim arose when she initiated arbitration proceedings on March 12, 2012, prior to Mr. Ceran's transfer of the patent rights. Compl. ¶¶ 1, 10–20, 33; Cooper Decl. ¶¶ 4–11; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 14–16. Additionally, there is no evidence of Mr. Ceran "receiving a reasonably equivalent value in exchange for the transfer[,]" but rather that he "became insolvent" as a direct result of it. *See* Compl. ¶¶ 15, 20, 23–24, 33, 37; Cooper Decl. ¶¶ 4, 5, 9, 11–12, 21, 25; Patent Assignment at 4; Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 15–16. Accordingly, Plaintiff establishes that the transfer should be voided.

### C. Fraudulent and Negligent Concealment

Because Plaintiff satisfies the elements of the Uniform Voidable Transactions Act, California Civil Code §§ 3439.04–3439.05, the Court need not consider whether Plaintiff also meets the requirements of Counts II and III, fraudulent and negligent concealment.

### D. Constructive Trust

For the patent assets to be held in constructive trust, Plaintiff must establish (1) a trust res, (2) her right to the res, and (3) that Defendant wrongfully obtained the res. *E.g.*, *In re Sexton*, 166 B.R. 421, 425 (Bankr. N.D. Cal. 1994) (citations omitted); *see* Cal. Civ. Code § 2223 ("One who

9

wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner."); Cal. Civ. Code § 2224 ("One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.")  As noted above, Defendant fraudulently gained possession of the patent applications—the trust res.  *See supra*, at 7–9; 35 U.S.C. § 261 (defining patents as personal property); Pl.'s Mem. of Law in Supp. of Mot. for Default J. at 17–18.  Plaintiff has also established her right to the res, which includes the '940 Patent granted on May 28, 2013.  *See supra*, at 7–9; Compl. ¶ 30.  Defendant therefore holds the patent rights in constructive trust for Plaintiff.

### E. Attorneys' Fees, Costs, and Interest

While Plaintiff's Complaint requests attorneys' fees, costs, and post- and pre-judgment interest, it does not provide amounts for any of these in the pleadings, and the relief sought is not a money judgment.  *See* Compl. at 14; Ex. B (Dkt. No. 19-2).  The undersigned therefore recommends denying attorneys' fees, costs, and post- and pre-judgment interest.

## VI. Recommendation

For the foregoing reasons, and pursuant to 15 U.S.C. § 1119, permitting the Court to "determine the right to registration[,]" the undersigned recommends that default judgment be entered against Defendant, and that the USPTO transfer the following patent rights to Plaintiff:

(1) United States Provisional Patent Application No. 60/913,997, filed on April 25, 2007, with the title "Deposition of High-Purity Silicon via High-Surface Area Gas-Solid or Gas-Liquid Interfaces and Recovery via Liquid Phase."

(2) United States Patent Application No. 12/597,151, which claimed priority to U.S. Provisional Patent Application No. 60/913,997 and was granted on May 28, 2013 as United States Patent No. 8,449,940, with the title "Deposition of High-Purity Silicon via High-Surface Area Gas-Solid or Gas-Liquid Interfaces and Recovery via Liquid Phase."

(3) United States Provisional Patent Application No. 61/504,145, filed on July 1, 2011, with the title "Cartridge Reactor for Production of High-Purity Amorphous and Crystalline Silicon and Other Materials."

(4)     United States Provisional Patent Application No. 61/504,148, filed on July 1, 2011, with the title "Deposition Cartridge for Production of High-Purity Amorphous and Crystalline Silicon and Other Materials."

(5)     United States Provisional Patent Application No. 61/521,285, filed on August 8, 2011, with the title "Deposition Cartridge for Production of High-Purity Amorphous and Crystalline Silicon and Other Materials."

(6)     United States Provisional Patent Application No. 61/522,674, filed on August 11, 2011, with the title "Deposition Cartridge for Production of High-Purity Amorphous and Crystalline Silicon and Other Materials."

(7)     Application No. PCT/US2008/061651, filed on April 25, 2008, with the title "Deposition of High-purity Silicon via High-Surface Area Gas-Solid or Gas-Liquid Interfaces & Recovery via Liquid Phase."

(8)     Application No. PCT/US2012/045176, filed on July 1, 2012, with the title "Deposition Cartridge for Production Materials via the Chemical Vapor Deposition Process."[4]

(9)     Application No. PCT/US2012/045177, filed on July 1, 2012, with the title "Cartridge Reactor for Production of Materials via the Chemical Vapor Deposition Process."

(10)    United States Patent Application No. 13/904,004, which claims priority to U.S. Patent Application No. 12/597,151 (issued as U.S. Patent No. 8,449,940) entitled "Deposition of High Purity Silicon Via High Surface Area Gas-Solid or Gas-Liquid and Recovery Via Liquid Phase."

(11)    United States Patent Application No. 14/130,662, which claims priority to U.S. Patent Application No. 12/597,151 (issued as U.S. Patent No. 8,449,940) entitled "Deposition Cartridge for Production Materials via the Chemical Vapor Deposition Process."

(12)    United States Patent Application No. 14/130,669, which claims priority to U.S. Patent Application No. 12/597,151 (issued as U.S. Patent No. 8,449,940) entitled "Cartridge Reactor for Production of Materials via the Chemical Vapor Deposition Process."

It is further recommended that Defendant be found to have held the patent rights in constructive trust for Plaintiff.

## VII.    Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to Defendants at their address for service of process, the parties are notified as

---

[4] The patent assignment labels Application No. PCT/US2012/045176 as "Deposition Cartridge for Production Materials via the Chemical Vapor Deposition Progress," but given Application No. PCT/US2012/045177's title, it appears that "Progress" is supposed to be "Process."  *See* Patent Assignment at 6.

follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

March 23, 2018
Alexandria, Virginia